UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JUANITA MAGNESS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:18-CV-103 NAB |
| ) | |
| ANDREW M. SAUL[1], ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Juanita Magness' appeal regarding the denial of disability insurance benefits and supplemental security income under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 7.] The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

### Issues for Review

Magness asserts that the administrative law judge's ("ALJ") residual functional capacity ("RFC") determination is not supported by substantial evidence because the ALJ improperly

---

[1] At the time this case was filed, Nancy A. Berryhill was the Acting Commissioner of Social Security. Andrew M. Saul became the Commissioner of Social Security on June 4, 2019. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Andrew M. Saul for Nancy A. Berryhill in this matter.

weighed the opinion testimony of treating and examining physicians and failed to properly evaluate her credibility. The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

**Standard of Review**

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national

economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).

The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003). "In this substantial-evidence determination, the entire administrative record is considered but the evidence is not reweighed." *Byes v. Astrue*, 687 F.3d. 913, 915 (8th Cir. 2012).

## Discussion

The ALJ found that Magness met the insured requirements of the Social Security Act through December 31, 2019 and that she has not engaged in in any substantial gainful activity

3

since December 23, 2014, the alleged onset date of disability. Magness alleged disability due to osteoarthritis, sacroiliitis, high blood pressure, arthritis in the right knee, vision impairment, weight bearing joints in the knee, back problems in the lumbar spine, anemia, high cholesterol, irritive colon, and lupus. The ALJ held that Magness had the severe impairments of degenerative disc disease of the cervical and lumbar spine, sacroiliitis, obesity, osteoarthritis, and right knee meniscus tear. She found that Magness did not have an impairment or combination of impairments that met or medically equaled the severity of listed impairments in 20 C.F.R. Part 404, Subpart P of Appendix 1.

Next, the ALJ determined that Magness had the RFC to perform sedentary work with the following limitations: (1) occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl; (2) never climb ladders, ropes, or scaffolds; (3) no exposure to hazards such as unprotected heights and moving mechanical parts; and (4) no positions that require the operation of a motor vehicle. Because of the limitations of the RFC, the ALJ found that Magness could not perform her past relevant work as a home nurse aide, nurse assistant, or production worker. Based on her age, education, work experience, and the RFC, the ALJ found that there were jobs in the national economy that Magness could perform as a hand assembler, table worker, and machine tender. Therefore, the ALJ found that Magness has not been under a disability from September 23, 2014 through the date of the decision.

**RFC Determination**

Magness contends that the RFC determination is not supported by substantial evidence, because the ALJ improperly weighed the medical opinion evidence and did not properly evaluate her credibility. The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545(a),

4

416.945(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[2] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox*, 471 F.3d at 907.

**Medical Opinion Evidence**

Magness asserts that the ALJ improperly weighed the medical opinions of her treating physician Dr. Jarrod Drab and consultative examiner Matthew Karshner.

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant can still do despite her impairments and her physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). All medical opinions, whether by treating or consultative examiners are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's

---

[2] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Hacker*, 459 F.3d at 937. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000).

"Good reasons for assigning lesser weight to the opinion of a treating source exist where the treating physician's opinions are themselves inconsistent, or where other medical assessments are supported by better or more thorough medical evidence." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (internal citations omitted). The court reviews "the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [it is not required for] an ALJ to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).

**Dr. Drab[3]**

The administrative record contains treatment records from Dr. Drab between 2014 and 2016. Dr. Drab treated Magness for hypertension, obesity, anemia, acute meniscal tear of right knee, sacroiliitis, degeneration of lumbar or lumbosacral intervertebral disc, mixed hyperlipidemia, arthritis of knee, Vitamin D deficiency, deukocytosis, lumbosacral spondylosis without myelopathy, legal blindness, and joint pain. Magness reported ankle, back, and arthritis pain, and muscle cramps. She also had times when she was pain free.

---

[3] The Court notes that the ALJ erroneously attributed an opinion to Dr. Drab. (Tr. 19, 526-27.) The opinion was actually authored by Mallory Pagan, a physical therapist. The Court will not address this opinion.

Dr. Drab completed three medical opinion statements. Dr. Drab completed a Doctor's Certificate for unemployment benefits in October 2014. (Tr. 524-25.) In this opinion, Dr. Drab noted that Magness was being treated for right knee meniscus tear and sacroiliitis. (Tr. 524.) Dr. Drab wrote that he advised Magness to leave work on September 23, 2014. (Tr. 524.) Dr. Drab indicated that Magness could sit for 10 minutes and stand or walk for five minutes maximum during a workday. (Tr. 524.) He also indicated that Magness was unable to climb stairs or ladders, kneel or squat, bend or stoop, push or pull, keyboard, lift, or carry. (Tr. 525.) Dr. Drab indicated that Magness' disability was not permanent, but it was expected to last more than 6 months. (Tr. 525.) The ALJ did not review this opinion.

In November 2014, Dr. Drab completed a "Medical Opinion Re: Ability To Do Physical Activities." (Tr. 1271-73.) Dr. Drab wrote that Magness diagnoses included sacroiliitis, current tear of meniscus of knee, lumbosacral spondylosis without myelopathy, benign essential hypertension, legal blindness, pain in pelvic region and thigh joint, and obesity. (Tr. 1271.) He opined that her prognosis was fair. He stated that she could continuously sit for 10 minutes at one time and stand for 5 minutes at one time. He indicated that she could sit, stand, or walk for a total of less than 2 hours in an 8 hour working day. He stated that she needed a job where she could shift positions at will from sitting, standing, or walking. He opined that Magness needed to take unscheduled breaks of 10 minute durations every 5 to 10 minutes during an 8 hour working day. He opined that her legs would need to be elevated with prolonged sitting to hip height during 80% of the working day. He stated that she must use a cane while standing or walking. He stated that she could occasionally lift and carry 10 pounds or less and never carry more than 20 pounds. He opined that she had significant limitations in repetitive reaching, handling, or fingering; was limited to grasping, turning, twisting, and performing fine manipulations 80% of the work day;

7

and reaching overhead 20% of the work day.  He opined that she could never twist, stoop (bend), crouch, climb stairs, or climb ladders.  He opined that she needed to avoid exposure to extreme cold, extreme heat, high humidity, fumes, odors, dust, gases, perfumes, cigarette smoke, soldering fluxes, solvents/cleaners, and chemicals.  He also opined that she would likely be absent from work more than twice per month.  Dr. Drab's third opinion was a medical questionnaire regarding mental impairments where he rated her as "good" regarding her mental abilities to perform work. (Tr. 772-774.)

The ALJ gave Dr. Drab's opinions little weight because she found they were not supported by his treatment records (Tr. 20.)  The ALJ stated that Dr. Drab's opinion appeared to be based off of Magness' subjective complaints rather than objective testing, which showed she does not have lumbosacral radiculopathy and minimal to moderate changes in her cervical, thoracic, and lumbar spine.  The ALJ also cited to records that indicated Magness had a normal gait.  Magness asserts that the objective evidence cited by the ALJ is not inconsistent with Dr. Drab's opinion.

Dr. Drab's November 2014 opinion consisted of a checklist form completed with no substantive content.  "The checklist format, generality, and incompleteness of the assessments limit the assessments' evidentiary value." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (citing *Holstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001)).  Treatment records indicate that Magness had both a normal and antalgic gait during the treatment period in the record.  As Magness notes, there were a number of MRIs, X-rays, and a surgery that occurred after the medical opinion evidence was provided.  The evidence in the record as a whole does not provide support for the substantial limitations contained in Dr. Drab's opinions, which were completed in 2014. Therefore, the ALJ did not err in giving little weight to Dr. Drab's opinions.

**Dr. Karshner**

Dr. Karshner performed a consultative examination of Magness on February 2, 2015[4], including a range of motion evaluation, measuring Magness' active and passive ranges of her body movements. (Tr. 811-15.) She was able to rise from a chair and walk with one crutch on the left. (Tr. 812.)

Upon physical examination, Dr. Karshner noted that Magness' muscle tone and mass were normal and symmetrical to careful detailed evaluation bilaterally. (Tr. 812.) Her sensation was normal in all dermatomes and nerve distributions of both arms, legs, hands, and feet. Her reflexes were 1+ upper extremities, l+ knees, absent ankles. The straight leg raising tests were negative in the supine and sitting positions, and there was no clonus or Babinski found.

Dr. Karshner noted that Magness declined flatly to walk on heels, tiptoes, tandem walk, hop, or squat. (Tr. 812.) She was not forced to perform any maneuvers. Though the examination of her hips revealed reported pain complaints, Dr. Karshner noted there was no loss of range of motion to suggest a bony or joint pathology. Examinations of the knees were unremarkable on both sides with complaints of pain mostly on the right with minimal complaints on the left.

Through the rest of the evaluation, Dr. Karshner noted no grimacing or pain behavior from Magness of any kind, including heavy breathing. (Tr. 812.) Waddell signs were positive for simulation with simulated loading of the low back through pressure on the shoulders and the spine and with sham rotation, all of which are non-physiological. (Tr. 812.) Additionally, there was no true neurological abnormality found anywhere in his examination of Magness, and she was alert

---

[4] The Court notes that Magness visited Dr. Karshner for treatment in 2016, over a year after performing the consultative examination. (Tr. 1357-1365.)

9

and fully oriented and cooperative. (Tr. 812-13.) Dr. Karshner further noted that her muscle tone and mass were normal and symmetrical. (Tr. 812.)

Dr. Karshner concluded that Magness presented with obesity and scoliosis, but there were no findings on her exam to support her left hip pain, great toe pain, nor a meniscal tear. (Tr. 813.) Dr. Karshner noted there was strong evidence of symptom magnification. He further noted no specific findings that would require Magness to use a crutch because she was able to walk into the exam room without any difficulty. Dr. Karshner opined that Magness demonstrated the ability to perform and sustain work-related functions including sitting, standing, walking, carrying, lifting, handling objects, hearing, speaking, and traveling would be limited to the sedentary to occasionally light-duty level.

The ALJ gave significant weight to Dr. Karshner's opinion. (Tr. 20.) The ALJ found that Dr. Karshner's opinion was supported by the objective evidence in the medical record and he examined Magness to specifically address her ability to perform and sustain work-related activities of sitting, standing, walking, carrying, lifting, handling objects, hearing, and speaking. The ALJ noted that Dr. Karshner's opinion was consistent with the opinion of Dr. Joel West Ray, Magness' treating neurosurgeon.

Magness contends that the ALJ should not have given substantial weight to Dr. Karshner's opinion, because he was a one-time examining doctor, the examination was performed over a year before the administrative hearing, and it did not include a review of her MRIs of her lower extremities, lumbar, thoracic, and cervical spines and brain in 2015 and 2016, her knee surgery in 2015, and bilateral knee x-rays in 2016. Magness also states the ALJ erred in stating Dr. Ray's comments support Dr. Karshner's opinion.

After a review of the evidence in the record as a whole, the Court finds that the ALJ's evaluation of Dr. Karshner's opinion is supported by substantial evidence. Dr. Karshner's February 2015 opinion and the later medical records cited by Magness indicate consistency between his opinion and the other objective medical records. Magness cites to the March 2015 MRI of her lumbar spine (Tr. 885, 897). In August 2015, a CT scan indicated there was no significant change from her March 2015 MRI. In 2015 and 2016, several providers noted that Magness made a poor effort on examinations and that her symptoms were not consistent with or proportionate to her physical examinations or objective medical testing. (Tr. 956-59, 995-98, 1033-36.) This evidence is consistent with Dr. Karshner's findings of a positive Waddell sign and strong evidence of symptom magnification. (Tr. 812-813.) Magness had knee surgery to repair her meniscal tear in April 2015. (Tr. 869-70.) The knee x-rays in January 2016, showed mild osteoarthritis in her right knee and her left knee was normal. (Tr. 960.) Dr. Steven Cherney reviewed her x-rays and recommended isometric quadriceps exercises, that she lose weight, manage her pain with anti-inflammatories and injections. Cherney noted that Magness told him she was not interested in doing exercises that would help her pain, refused an injection at that visit, and stated she was already taking anti-inflammatories. (Tr. 958.) Based on the evidence in the record as a whole the Court finds that the ALJ did not err in her assessment of Dr. Karshner's opinion.

**Credibility**

Next, Magness contends that the ALJ failed to properly consider her credibility. In considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:

> (1) The claimant's daily activities;
>
> (2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) Any precipitating or aggravating factors;
>
> (4) The dosage, effectiveness, and side effects of any medication; and
>
> (5) The claimant's functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). It is not enough that the record contains inconsistencies; the ALJ is required to specifically express that he or she considered all of the evidence. *Id.* The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. *Id.* Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988). "While the extent of daily living activities does not alone show an ability to work, such activities may be considered along with other evidence when evaluating a claimant's credibility." *Walker v. Colvin*, 124 F.Supp. 3d 918, 936 (E.D. Mo. 2015).

"Although evidence of pain suffered by a claimant may be of necessity subjective in nature, and therefore difficult to evaluate, the [ALJ] must give serious consideration to such evidence even though it is not fully corroborated by objective examinations and tests performed on the claimant." *Northcutt v. Califano*, 581 F.2d 164, 166 (8th Cir. 1978). "Whether or not a medical explanation for the pain can be given, it is nevertheless possible that the claimant is suffering from disabling pain." *Layton v. Heckler*, 726 F.2d 440, 442 (8th Cir. 1984).

Magness testified regarding substantial pain centered in her hips, back, legs, and neck. She testified that she has pain all day, every day, and never has good or bad days with her pain. She

testified that sitting in vehicles worsens the pain in her back, legs, and hips. She testified that no matter how long she walks or is on her feet, she is always in pain. The ALJ found that Magness' allegations were not fully consistent with the other evidence in the administrative record. (Tr. 16.) The ALJ noted that the objective evidence, her treatment history, and activities of daily living do not support her allegations about the severity of her symptoms.

Magness contends that the ALJ completely discounted her pain complaints. A review of the ALJ's opinion indicates that the ALJ considered her pain complaints by evaluating her testimony, the objective medical evidence in the record, and her medications. The ALJ included several limitations that address Magness' pain complaints. "As is true in many disability cases, there is no doubt that the claimant is experiencing pain." *Perkins v. Astrue*, 648 F.3d 892, 901 (8th Cir. 2011). "While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability." *Perkins*, 648 F.3d at 900.

Based on a careful review of the evidence in the record as a whole, the Court finds that the ALJ's RFC determination is supported by substantial evidence in the record as a whole. A review of the record as a whole demonstrates that Magness has some restrictions in her functioning and ability to perform work related activities, however, she did not carry her burden to prove a more restrictive RFC determination. *See Pearsall*, 274 F.3d at 1217 (it is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC). The Court may only "disturb" the ALJ's decision if it is outside the available zone of choice. *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015). "An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [it] been the initial finder of

13

fact." *Id.* Based on the foregoing, the Court finds that the ALJ's RFC determination finds substantial support in the record.

**Conclusion**

The Court finds that substantial evidence supports the ALJ's decision as a whole. As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only enough that a reasonable mind would find it adequate to support the decision, and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). The Court cannot reverse merely because substantial evidence also exists that would support a contrary outcome, or because the court would have decided the case differently. *Id.* Substantial evidence supports the Commissioner's final decision.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 16.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Andrew M. Saul for Nancy A. Berryhill in the court record of this case.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of November, 2019.